FILED
JUN 11 2002
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT

__NORTHERN__ DISTRICT OF __ILLINOIS, EASTERN DIVISION__

UNITED STATES OF AMERICA

v.

Pedro Gutierrez, Rosalio Carrera,
Tony Howey, Vincente Ojeda,
Juan Casteneda, Jesus Rivas,
Heliodoro Herrera, and Jorge Molero

MAGISTRATE JUDGE ASHMAN

CRIMINAL COMPLAINT

**02CR0573**

CASE NUMBER:

DOCKETED
JUN 1 2 2002

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __June 10, 2002__ in __Cook__ county, in the __Northern__ District of __Illinois__ defendant(s) did,

knowingly conspire to and did possess with the intent to distribute more than 1000 kilograms of marijuana, a Schedule I controlled substance

in violation of Title __21__ United States Code, Section(s) __841(a)(1) and 846__.

I further state that I am a(n) __Task Force Officer with the DEA__ and that this complaint is based on the following
Official Title

facts:

**SEE ATTACHED AFFIDAVIT**

Continued on the attached sheet and made a part hereof: __X__ Yes ____ No

TFO [signature]
Signature of Complainant

Sworn to before me and subscribed in my presence,

June 11, 2002
Date

at Chicago, Illinois
City and State

Martin C. Ashman
United States Magistrate Judge
Name & Title of Judicial Officer

[signature]
Signature of Judicial Officer

STATE OF ILLINOIS   )
                    )  SS
COUNTY OF COOK      )

## AFFIDAVIT

I, Peter Michaels, being duly sworn under oath, state as follows:

1.     I am a Sergeant with the Waukegan Police Department and have been so for over 8 years. Since December 2001, I have been assigned as a Task Force Officer with the Drug Enforcement Administration ("DEA"), assigned to the Chicago Field Division. From August 1998 to November 2001, I was assigned to the Illinois State Police HIDTA task force. I currently investigate criminal violations of the federal narcotics laws, including, but not limited to, Title 21, United States Code, Sections 841, 843, 846, and 848. I have received specialized training in the enforcement of laws concerning controlled substances as found in Title 21 of the United States Code. I have been involved in the debriefing of defendants, witnesses, and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and the laundering and concealing of proceeds from drug trafficking.

2.     This affidavit is based on my own observations and on conversations that I have had with other law enforcement officers and cooperating witnesses. This affidavit is being submitted for the limited purpose of establishing probable cause for a criminal complaint charging the following individuals with conspiracy to distribute and possession with intent to distribute more than 1000 kilograms of marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846:

    (1) Pedro Gutierrez, date of birth 8/19/73;

    (2) Rosalio Carrera, date of birth 6/1/71;

(3) Tony Howey, date of birth 3/7/66;

(4) Vincente Ojeda, date of birth 9/4/60;

(5) Juan Casteneda, date of birth 5/2/71;

(6) Jesus Rivas, date of birth 3/24/83;

(7) Heliodoro Herrera, date of birth 3/29/74;

(8) Jorge Melero, date of birth 1/31/79;

3. On June 9, 2002, law enforcement officers stopped a tractor-trailer on Interstate 44 in Missouri. The tractor-trailer was driven by defendant Pedro Gutierrez and was found to be carrying approximately 10,000 pounds of marijuana which was concealed in steel containers.

4. Gutierrez agreed to cooperate with the officers. Gutierrez stated that he was to deliver the marijuana to Chicago. Gutierrez said that he had a telephone number to contact upon his arrival in Chicago. Gutierrez said he would be given further instructions after contacting the number.

5. On June 9, 2002, the tractor-trailer was driven to the Chicago area.

6. On June 10, 2002, Gutierrez, under the direction of DEA agents, had a number of phone conversations with the contact number. At approximately 7:30 p.m., the contact number called Gutierrez and gave him directions to an address in Blue Island, Illinois.

7. On June 10, 2002, at approximately 7:55 p.m., Gutierrez drove the tractor-trailer to the address, which turned out to be 2341 135th Place in Blue Island, Illinois.

8. When the tractor-trailer arrived at 2341 135th Place in Blue Island, Illinois, agents noticed that a warehouse was located there with a loading dock on the north-east side of the building and a large bay door on the north-west side of the building. Gutierrez backed the tractor-trailer to the loading dock on the north-east side of the warehouse.

9. After approximately 45 minutes, surveillance agents and other law enforcement officers entered the building. Agents then detained 8 individuals for further investigation. The following individuals were detained.

 (1) Pedro Gutierrez. When stopped by the Phelps Country Sheriff's Department, Mr. Gutierrez confessed to his knowledge of the drug activity. As discussed above, Mr. Gutierrez then agreed to cooperate with law enforcement. Mr. Gutierrez also criminally implicated Rosalio Carrera.

 (2) Rosalio Carrera. Mr. Carrera was the contact person for Mr. Gutierrez. Mr. Carrera placed a number of phone calls to Mr. Gutierrez and gave Mr. Gutierrez directions to the warehouse in Blue Island, Illinois. Mr. Carrera was implicated by Mr. Gutierrez.

 (3) Tony Howey. Mr. Howey was the manager of the warehouse in Blue Island, Illinois, and confessed to his knowledge of the drug activity. Mr. Howey implicated Vincente Ojeda, Juan Castaneda, and Jesus Rivas.

 (4) Vincente Ojeda. Mr. Ojeda was implicated by Mr. Howey. Mr. Ojeda drove a van to the warehouse. According to Mr. Howey, one of containers was scheduled to be loaded into Mr. Ojeda's van. In my experience, at an offload site, drug traffickers do not give a container containing hundreds of thousands of dollars worth of marijuana to individuals with no knowledge of the criminal activity.

 (5) Juan Casteneda. Mr. Casteneda confessed to his knowledge of the drug activity. Mr. Casteneda stated that he was paid $1000 for his participation

and that he was given an additional $4000 to pay Jesus Rivas and others involved. Mr. Casteneda was implicated by Mr. Howey.

(6) Jesus Rivas. Mr. Rivas confessed to his knowledge of the drug activity. Mr. Rivas called Mr. Howey and arranged for Howey to stay later at the warehouse for the offloading of the containers and agreed to pay Howey an additional $500 for his time.

(7) Heliodoro Herrera. Mr. Herrera was present at the warehouse in Blue Island, Illinois when the containers were off loaded. According to Mr. Howey, some of the containers were to be loaded onto a box truck and then driven to another location where the marijuana would be distributed. Mr. Herrera stated that he owned the box truck. In my experience, at an offload site, drug traffickers do not give containers containing millions of dollars worth of marijuana to individuals with no knowledge of the criminal activity.

///

///

///

///

(8) Jorge Melero. Mr. Melero was present at the warehouse where the containers were offloaded. Mr. Howey stated that Mr. Melero drove one of the forklifts which offloaded the containers from the tractor-trailer. In my experience, narcotics traffickers do not hire innocent bystanders to offload over $10,000,000 worth of marijuana.

*Peter Michaels*, Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me
this 11th day of June 2002.

*Martin C. Ashman*
Martin C. Ashman
United States Magistrate Judge